UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JONATHAN BARRIOS, | ) | NO. CV 13-3319 AGR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION AND |
| CAROLYN W. COLVIN, | ) | ORDER |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

The opinion dated April 16, 2015 is VACATED.  The court enters the following Opinion and Order:

Plaintiff Jonathan Barrios filed this action on May 15, 2013.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on June 7 and 13, 2013.  (Dkt. Nos. 7, 10.)  On January 24, 2014, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court ordered supplemental briefing.  On March 13, 2015, the Commissioner filed a response to the court's order.  (Dkt. No. 19.)  On March 27, 2015, the Plaintiff filed a reply. (Dkt. No. 20.)

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands this matter for further proceedings.

1

**I.**

2

**PROCEDURAL BACKGROUND**

3        This case entails a continuing disability review in connection with a

4    childhood disability benefits and social security benefits redetermination.

5    Administrative Record ("AR") 13.  At the age of 16, following a Title XVI

6    application filed on January 15, 2009, Barrios received supplemental security

7    income benefits based on disability as a child.  He was found disabled secondary

8    to Attention Deficit Hyperactivity Disorder ("ADHD") and learning deficits.  *Id.*

9    Separately, based on an April 30, 2010 claim for childhood disability benefits as

10   the child of a disabled worker, Barrios was granted Title II benefits as of his

11   mother's alleged onset date of June 2008.  AR 13.

12       When Barrios turned 18 on February 19, 2010, continuing disability review

13   was initiated in connection with his supplemental security income application.  It

14   was determined that as of August 1, 2010, Barrios was no longer disabled under

15   the rules for determining disability in adults.  AR 13.  The determination was

16   upheld on reconsideration.  AR 13, 51-58.  Likewise, Barrios' continued eligibility

17   for Title II benefits as the child of a disabled worker was found to have ceased

18   insofar as he was found to be not disabled from and after age 18.  AR 13, 33-37.

19   The determination was upheld on reconsideration.  AR 51-55.

20       Barrios requested a hearing before an Administrative Law Judge ("ALJ").

21   AR 59.  On January 17, 2012, the ALJ conducted a hearing at which Barrios, his

22   mother, a medical expert and a vocational expert ("VE") testified.  AR 335-60.  On

23   January 26, 2012, the ALJ issued a decision finding Barrios no longer eligible for

24   social security income benefits as a disabled adult, and for Title II benefits.  AR

25   13-25.  On March 12, 2013, the Appeals Council denied the request for review.

26   AR 6-9.  This action followed.

27

28

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A.    Disability

A person qualifies as disabled and thereby eligible for such benefits "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B.    The ALJ's Findings

Following the five-step sequential analysis applicable to disability

determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Barrios has not engaged in substantial gainful activity since February 19, 2010, the alleged onset date.  AR 16.  Barrios has the severe impairments of ADHD and learning disorder, not otherwise specified.  *Id.*  He does not have an impairment that meets or equals a listing.  AR 18.  He has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but he can perform no more than simple, repetitive tasks on a constant basis; perform complex and detailed tasks on no more than an occasional basis; engage in no more than occasional interactions with supervisors, co-workers, and the public; and perform no more than production pace work requiring results at the end of the workday rather than work requiring specific production goals periodically throughout the workday.  AR 19.  He has no past relevant work, but there are jobs that exist in significant numbers in the national economy that he can perform such as factory worker, laundry worker and general helper.  AR 23-24.

### C.   Continuation of Benefits

Barrios contends the ALJ erred in not finding that his Title XVI benefits should have continued under 20 C.F.R. § 416.1338 despite termination of disability at the age 18 redetermination.

Disability benefits "shall not be terminated or suspended because the . . . physical or mental impairment, on which the individual's eligibility for such benefit is based, has or may have ceased, if – (A) such individual is participating in a program consisting of the Ticket to Work and Self-Sufficiency Program under section 1148 [42 U.S.C. § 1320b-19] or another program of vocational

---

[1]   The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work.  *Lounsburry*, 468 F.3d at 1114.

1    rehabilitation services, employment services, or other support services approved

2    by the Commissioner of Social Security, and (B) the Commissioner of Social

3    Security determines that the completion of such program, or its continuation for a

4    specified period of time, will increase the likelihood that such individual may

5    (following his participation in such program) be permanently removed from the . .

6    . disability benefit rolls."  42 U.S.C. § 1383(6).

7          Consistent with the statute, the regulation states, in pertinent part, that a

8    person's "benefits may continue after [the person's] impairment is no longer

9    disabling . . . if . . . [the person is] participating in an appropriate program of

10   vocational rehabilitation services . . . and . . . [the] completion of the program, or .

11   . . continuation in the program for a specified period of time, will increase the

12   likelihood that [the person] will not have to return to the disability . . . benefit rolls."

13   20 C.F.R. § 416.1338(a).  "If you are a student age 18 through age 21

14   participating in an individualized education program described in paragraph (c)(4)

15   of this section, we will find that your completion of or continuation in the program

16   will increase the likelihood that you will not have to return to the disability or

17   blindness benefit rolls."  *Id.* § 416.1338(e)(2).

18         The ALJ acknowledged that Barrios "has required ongoing transitional job

19   training after leaving high school."  AR 21.  The record indicates that Barrios'

20   functioning improved since he began a program with The Help Group in 2007.

21   Whereas Barrios' full scale IQ in 2006 was 80 (AR 324), Barrios' full scale IQ of

22   92 and his Wechsler memory scores in July 2010 indicated average functioning.

23   AR 22, 246-48, 287, 342-43.  Nevertheless, Barrios' academic skills were at a

24   third-to-fifth grade level according to his Woodcock Johnson Achievement Test in

25   September 2011.  The medical expert testified that Barrios' academic skills

26   testing was indicative of a learning disorder.  AR 22, 287, 343-44.  At the time of

27   the hearing in January 2012, Barrios participated in a vocational training program

28   through The Help Group, where he learned "how to prepare for a job in the

community." AR 348.  Barrios worked in the school café learning how to take
inventory, use a cash register, communicate with customers, and cook and
handle food properly.  AR 22, 292.  He participated in the school lunch delivery
program where he learned how to take orders, fill out order forms, calculate total
purchases, and go to local establishments to place the orders.  He received
outstanding ratings on his evaluation forms and qualified to work with the off-
campus workability program.  AR 292.  He was noted to be a hard worker,
displaying independence on the job and in the classroom.  AR 293.  He could
complete many tasks with little prompting and minimal supervision.  He was
"extremely responsible when it [came] to initiating and completing tasks and he
[had] great attendance."  *Id.*  He worked well with others, although it was noted
that he needed to keep a professional relationship with his supervisors.  AR 293.
Barrios' experience at The Help Group clearly contributed significantly to his
progress in learning work-related functions.  As Barrios argues, his placement in
the Bridgeport school system on an almost full time basis would interfere with his
ability to work full time.

The court ordered supplemental briefing on the questions of (1) what steps
a claimant must follow to obtain a determination under § 416.1338 and (2)
whether a determination was made as to Barrios' eligibility under § 416.1338.

According to the Commissioner, the Field Office identifies individuals
participating in an appropriate program when an application is made.  (Dkt. No.
19 at ii.)  Question 10 asks whether the claimant is participating in "[a]n
individualized education program (IEP) through a school (if a student age 18-21)"
or "[a]ny program providing vocational rehabilitation, employment services, or
other support services to help you go to work?"  AR 165.  Barrios answered "No"
to this question.  *Id.*  Barrios' Disability Report – Appeal similarly answered "no" to
this question.  AR 189.  Because of Barrios' answers, "no evaluation or
determination was made when Plaintiff's benefits ceased."  (Dkt. No. 19 at iv.)

1  Apparently, if a claimant answers yes to the appropriate questions and the

2  claimant's benefits cease, "[o]n appeal, the Office of Disability Operations (ODO)

3  would determine Plaintiff's participation in an appropriate Section 301 program."

4  (Id. at iii.)  "To obtain a final decision, a claimant must proceed through all steps

5  of the administrative appeals process."  (*Id.* at iv.)  In other words, the ALJ does

6  not make that determination.

7        Barrios acknowledges his answers on the forms, but argues that he should

8  not be faulted because it is undisputed that he suffers from a mental impairment

9  and the responses elsewhere on those forms stated that he is attending special

10  education classes at the Bridgeport School (AR 161), and that the school and

11  Barrios' mother "feel that Jonathan will benefit from this transition program to

12  assist him with vocational skills and independent living" (AR 190).  Barrios notes

13  that, in the next Disability Report – Appeal, he answered "yes" to the vocational

14  question, identified the Bridgeport School at The Help Group, and indicated that

15  the services included work ability workshop and life skills.  AR 197.  In the

16  remarks section, Barrios' mother indicates that Barrios will continue attending

17  school at The Help Group until age 22 and "I'm requesting assistance to continue

18  till then please."  AR 198.  Moreover, Barrios contends – and the Commissioner

19  does not appear to dispute – that the notices he received did not advise him of

20  how to pursue continued benefits administratively.  It is not clear who bears the

21  burden of initiating continued benefits proceedings.  Assuming without deciding

22  Barrios bore that burden, the court finds good cause for any mistake.

23        The Commissioner correctly argues that this court has jurisdiction to review

24  only the final decision of the ALJ, who did not make the determination under §

25  416.1338.  *See* Program Operational Manual Systems ("POMS") § DI

26  14505.010(A).  Apparently, no determination was made by the ODO, which is

27  responsible for determining the question of continued benefits after disability has

28  ceased.  "The determination of whether Plaintiff is entitled to continued benefits

1  after Plaintiff's disability ceased was not properly before the ALJ and is not before

2  this Court." *Thomas v. Colvin*, 2013 U.S. Dist. LEXIS 66569, *22 (E.D. Wash.

3  May 9, 2013).

4       Barrios responds that this court can remand the case with instructions that

5  the Commissioner make the appropriate administrative determinations.

6       In *Leschniok v. Heckler*, 713 F.2d 520 (9th Cir. 1983), the plaintiffs sought

7  a preliminary injunction to enjoin the Secretary from violating 42 U.S.C. §425(b),

8  the disability benefits counterpart to the statutory provision at issue in this case, §

9  1383(6). *Id.* at 521; 1986 Social Security Ruling ("SSR") LEXIS 37 n.1 (1986);

10  SSR No. 11-2p (discussing continued payments for young adults in vocational

11  rehabilitation or similar programs).  The Ninth Circuit affirmed the district court's

12  determination that it had jurisdiction under 28 U.S.C. § 1361, which "authorizes a

13  court to compel a federal official to perform a duty where the duty is clear and

14  certain, and the duty is ministerial and so plainly prescribed as to be free from

15  doubt." *Leschniok*, 713 F.2d at 522.

16       The court therefore has jurisdiction to remand this case for further

17  proceedings so the appropriate administrative proceedings under 20 C.F.R. §

18  416.1338 may take place.  Relief is appropriate because, after the ALJ's decision,

19  Barrios is entitled to an administrative determination as to continued benefits from

20  the ODO and may exhaust his remedies.  According to the Commissioner, a file

21  is generally transferred to the ODO after an ALJ's decision denying disability

22  benefits based on answers in the same application, which did not happen in this

23  case as discussed above.

24       **D.     Listed Impairment**

25       Barrios argues that he meets listing 12.02C.

26       At step three of the sequential analysis, the claimant bears the burden of

27  demonstrating that his impairments are equivalent to one of the listed

28  impairments that are so severe as to preclude substantial gainful activity.  *Bowen*

1   *v. Yuckert*, 482 U.S. 137, 141, 146 n.5 (1987).  "If the impairment meets or equals

2   one of the listed impairments, the claimant is conclusively presumed to be

3   disabled.  If the impairment is not one that is conclusively presumed to be

4   disabling, the evaluation proceeds to the fourth step."  *Id.* at 141; *see also Tackett*

5   *v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(iii),

6   416.920(a)(4)(iii).

7   "The listings define impairments that would prevent an adult, regardless of

8   his age, education, or work experience, from performing *any* gainful activity, not

9   just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.

10   Ct. 885, 107 L. Ed. 2d 967 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in

11   original).  "For a claimant to show that his impairment matches a listing, it must

12   meet *all* of the specified medical criteria.  An impairment that manifests only some

13   of those criteria, no matter how severely, does not qualify."  *Id.* at 530 (emphasis

14   in original).

15   Barrios cites a letter from a treating therapist that noted impulsivity (leaving

16   the classroom without permission, not notifying his mother of his whereabouts),

17   poor frustration tolerance (property destruction in the home) and difficulty with

18   executive functioning that have "at times" affected his functioning.  AR 285.

19   Listing 12.02C, however, requires a medically documented history of a chronic

20   organic mental disorder of at least two years' duration and one of the following:

21   (1) repeated episodes of decompensation, each of extended duration; (2) a

22   residual disease process that has resulted in such marginal adjustment that even

23   a minimal increase in mental demands or change in the environment would be

24   predicted to cause the individual to decompensate; or (3) current history of one or

25   more years' inability to function outside a highly supportive living arrangement,

26   with indication of continued need for such an arrangement.  The therapist's letter,

27   and the other records, do not come close to evidencing impairments that meet or

28   equal listing 12.02C.  The ALJ did not err.

1

## E.   Treating Physician

2    Barrios argues that the ALJ erred in discounting the opinion of Dr.

3  Temerova, his treating psychiatrist.

4    An opinion of a treating physician is given more weight than the opinion of

5  non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To

6  reject an uncontradicted opinion of a medically acceptable treating source, an

7  ALJ must state clear and convincing reasons that are supported by substantial

8  evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a

9  treating physician's opinion is contradicted by another doctor, "the ALJ may not

10 reject this opinion without providing specific and legitimate reasons supported by

11 substantial evidence in the record.  This can be done by setting out a detailed

12 and thorough summary of the facts and conflicting clinical evidence, stating his

13 interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and

14 quotation marks omitted).  "When there is conflicting medical evidence, the

15 Secretary must determine credibility and resolve the conflict."  *Thomas v.*

16 *Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks

17 omitted).

18    In a letter dated March 2, 2011, Dr. Temerova stated that Barrios had been

19 under her psychiatric care since April 2007.  He was diagnosed with Attention

20 Deficit Hyperactivity Disorder – Combined Type, Chronic Motor Tic Disorder, and

21 Dyssomnia NOS.  He was treated with medications with good response and no

22 side effects.  Nevertheless, Barrios "continues requiring support and redirection

23 with [] most of his daily activities at home and at school."  AR 281.

24    Subsequently, in a Mental RFC Questionnaire dated January 11, 2012, Dr.

25 Temerova indicated she saw Barrios every six to eight weeks for 30-45 minutes.

26 He was diagnosed with Attention Deficit Hyperactivity Disorder – Combined Type,

27 Chronic Motor Tic Disorder, Dyssomnia, and Learning Disorder (reading,

28 arithmetic).  Dr. Temerova also diagnosed borderline intellectual functioning.  AR

1  321.  Her clinical findings included difficulties sustaining attention for longer than a
2  few minutes, impulsivity, hyperactivity/fidgetiness, difficulties following through
3  without prompting, difficulties with organization/breaking tasks into smaller steps,
4  executive functioning limitations, easy frustration, anger and sleep disturbance.
5  AR 321-22.

6        For mental abilities and aptitudes needed for unskilled work, Dr. Temerova
7  indicated Barrios was not limited in his ability to understand and remember short
8  and simple instructions.  Barrios was limited but satisfactory in his ability to
9  remember simple work-like procedures; carry out short and simple instructions;
10  accept instructions and respond appropriately to supervisors; respond
11  appropriately to changes in a routine work setting; deal with normal work stress;
12  and interact with the general public.  AR 323-24.  Barrios was seriously limited
13  (meaning less than satisfactory but not precluded) in the areas of maintaining
14  attention for two hour segments; maintaining regular attendance and being
15  punctual; sustaining an ordinary routine without special supervision; completing a
16  normal workday and workweek without interruptions from psychologically based
17  symptoms; performing at a consistent pace without an unreasonable number and
18  length of rest periods; making simple work-related decisions; and maintaining
19  socially appropriate behavior.  Barrios was also seriously limited in the area of
20  using public transportation and traveling in an unfamiliar place.  AR 323-24.  Dr.
21  Temerova explained that distractibility has been a prominent symptom even with
22  medications.  Barrios has needed supervision to sustain a daily routine, and has
23  required support with decision making.  AR 323.

24        The ALJ found that Dr. Temerova's opinions were not supported by her
25  own medical findings and were inconsistent with the record as a whole.  AR 21-23.
26  The ALJ found "inconsistent statements regarding how long the claimant has
27  been attending the Help Group."  AR 21.  The Commissioner acknowledges the
28  ALJ was mistaken in this regard but argues the error was immaterial.  (JS at 13.)

11

1    The ALJ properly discounted Dr. Temerova's opinion that Barrios had

2  borderline intellectual functioning.  Dr. Temerova relied on test results from July

3  2006 conducted by Dr. Medina.  AR 324.  According to Dr. Temerova, the 2006

4  test results showed an IQ of 80 (borderline), with 65 verbal ("mild MR range") and

5  100 performance (average).  AR 324.  The ALJ concluded that Barrios' formal IQ

6  score from the more recent July 2010 psychological evaluation was more

7  indicative of his intellectual functioning.  His full scale IQ of 92 and his Wechsler

8  memory scores indicated average functioning.  AR 22, 246-48, 287, 342-43.

9    Nevertheless, consistent with the medical expert's testimony, the ALJ

10  acknowledged that the Woodcock Johnson Achievement Test in September 2011

11  showed that Barrios' academic skills were at a third to fifth grade level, which was

12  indicative of a learning disorder.  AR 22, 287, 343-44.

13    Social Security Ruling ("SSR") 11-2p[2] governs evaluation of disability in

14  young adults age 18 to approximately 25.  Sources of information about a young

15  adult's ability to work include medical sources, other sources, school records such

16  as Individualized Education Program ("IEP"), and community job placements.

17  The SSR cautions that IEP goals may be set lower than what would be expected

18  of a young adult without impairments.  A young adult with impairments "may have

19  achieved the goal simply because it was set low."  *Id.* at *12.  The SSR

20  acknowledges that "the young adult's ability to function in settings that are less

21  demanding, more structured, or more supportive than those in which people

22  typically work does not necessarily show how the young adult will be able to

23  function in a work setting.  We will consider the kind and extent of support or

24  assistance and the characteristics of any structured setting in which the young

25

26        [2]  Social Security rulings do not have the force of law.  Nevertheless, they
27  "constitute Social Security Administration interpretations of the statute it
    administers and of its own regulations," and are given deference "unless they are
28  plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
    F.2d 1453, 1457 (9th Cir. 1989).

1   adult spends his or her time when we evaluate the effects of his or her

2   impairment(s) on functioning."  SSR 11-2p, 2011 SSR LEXIS 2, *16-*17.  "If a

3   young adult can function only if he or she receives more help than would

4   generally be provided to people without medical impairments, we consider how

5   well the young adult would function without the extra help."  *Id.* at *17.  "When we

6   determine whether a person can do other work that exists in significant numbers

7   in the national economy, we do not consider whether he or she could do so with

8   accommodations."  *Id.* at *19.

9        Barrios argues that the ALJ failed to take into account the structured

10  setting, support and assistance Barrios received in his school and work

11  environments when assessing his functioning.  The ALJ's findings about Barrios'

12  functioning do not include an analysis of "the kind and extent of support or

13  assistance and the characteristics of any structured setting" in which Barrios

14  attended school or worked, and an assessment of his functioning without that

15  support.  *Id.* at *16-*17.  The record indicates that Barrios did receive academic

16  and vocational support and assistance in the Bridgeport programs that may not be

17  available to people in an ordinary work setting.  Barrios attended the Bridgeport

18  School, "a specialized day school of The Help Group," which serves adolescents

19  and young adults with special needs.  AR 332.  In the Bridgeport High School

20  Program, for example, Barrios' goal was to decrease impulsive behavior (*e.g.*,

21  getting out of his seat, leaving class without permission, failing to comply with

22  directives) and poor frustration tolerance from 11x per day to 5x per day with

23  minimal verbal prompts.  AR 219.  His accommodations included small group

24  setting, highly structured setting, smaller assignments, extra time, prompting to

25  stay on task, extra guided practice, and verbal/visual cues.  AR 227.  These

26  accommodations were "due to attention, memory, visual and motor integration

27

28

1   deficits." AR 228.  Later, in the Bridgeport Transition Program,[3] for example,

2   Barrios received psychiatric services, weekly individual sessions with a school-

3   based therapist and "special vocational accommodations made through The Help

4   Group." AR 285.  As of September 28, 2011, Barrios struggled with impulsivity

5   and maintaining attention during structured time, and "requires some prompting to

6   stay on task throughout the day." AR 289, 313-14.  His accommodations included

7   small group learning, extra time for completion of tasks, new lessons divided into

8   small units for comprehension, visual aids, verbal prompts and cues, and periodic

9   breaks if needed repetition.  AR 310.  Round trip transportation was provided.  AR

10   311.

11        The ALJ should conduct the analysis required by SSR 11-2p in the first

12   instance.  This matter will be remanded for further proceedings consistent with

13   this opinion and order.

14                                         **IV.**

15                                        **ORDER**

16        IT IS HEREBY ORDERED that this case is remanded under sentence four

17   of 42 U.S.C. § 405(g) for further proceedings (1) in the age 18 redetermination;

18   and (2) under 42 U.S.C. § 1383(a)(6) and 20 C.F.R. § 416.1338.

19        The Clerk shall serve copies of this Order herein on all parties or their

20   counsel.

21

22   DATED: February 24, 2016          _____

23                                     ALICIA G. ROSENBERG
                                       United States Magistrate Judge

24

25

26
_____

27        [3]  The transition program is for students who are 18-21 and includes on-
     the-job training on campus and in the community.  AR 333.  Barrios was placed
28   on a full time basis in the special day program.  AR 311.